Will the parties who are going to argue the case please approach the podium, identify yourselves and who you represent, and indicate to the court how much time you would like to argue the case. My name is Deborah Pugh and I represent the appellant Mark Schelling for the Office of the State Appellate Defender. I would like to lose some time for rebuttal, about 10 minutes for rebuttal. How much do you want to argue? Let's say 20 minutes and we'll see how it goes. Very well. Hi, I'm Assistant State's Attorney Veronica Calderon-Mallaby. I represent the people of the state of Illinois and I'll be asking for my allotted time. Very well. Now remember, the microphone is for recording purposes, not for amplification, so if you want to be heard by all your fans in the audience, keep your voice up, please. Thank you. Ms. Pugh. Good afternoon. Here's the court. My name is Deborah Pugh and I represent the appellant Mark Schelling. My plan is to only discuss arguments one and two, and so if this court has any questions related to the other arguments, of course, I'll be happy to answer those. So there are two different sets of, two different but intertwined sets of improper evidence that deprive Mark Schelling of a fair trial. The evidence was the other crimes evidence and the evidence that was actually elicited against him by his own attorney. This improper evidence combined could undermine any confidence that could be had in this case. Because of these two errors, this court should vacate his convictions and remand for a new trial. Now first, as for the other crimes evidence, now there are a lot of charges in this case, and it becomes very confusing and jumbled, so I'm just going to talk briefly about those so that we all know where we are. So there were 21 different charges in this case, all of them related to contact by phone, whether it was calls or texts, sometimes when Mr. Schelling was subject to an order of protection. And as the state acknowledges, all of those charges allege just verbal threats. So there was case 6898, as I call it, and that was 14 different counts, mostly in 2002 going, or 2012 going into 2013. It is harassment of a witness by telephone, aggravated stalking by telephone, texting, and that kind of thing. And then with case 12014, these were seven charges all related to contact on one day, April 11, 2013. And this was also harassment of a witness and contact by telephone, harassment by telephone. Now the other crimes evidence in this case was of a completely different nature. Whereas the state acknowledges that all the charges here were just verbal threats, the other crimes evidence was of a completely different sort. This involved breaking into the complainant's apartment or slashing her tires. These were in-person violent offenses. And so the first part of all the crimes evidence was alleging that Mark Schelling broke into the complainant's apartment. She said that he was trying to steal her television and also that he threw a bottle of wine at her, injuring her. And the other piece of other crimes evidence was from about a month later that he allegedly slashed all the tires on her car and then left the knife protruding from one of the tires. So these were sort of very violent and in-person and scary. And as the state- Was this event before or after the either indictment? All of these were before. The other crimes evidence was before that indictment. In fact, the state actually, though, did indict him on the two counts of other crimes evidence. But it seems that then they eventually dropped the case. They were unable to produce any evidence related to either of these events or to produce a witness that they alleged existed. And so he was first indicted on those. And then he was indicted on the crimes in 6898. But there was a lot of overlap. So Count 7 happened before the other crimes evidence, the first other crimes evidence. Then there was Count 8, then other crimes evidence, and then everything else. So it was sort of intertwined in terms of time. Now, the other crimes evidence was wrongly admitted both because of its low probative value and its highly prejudicial nature. So, I mean, the proximity of time is there in terms of looking at probative value. There's no denying that. What would affect this, the fact that it was a bench trial having an argument? Well, it does have an effect, of course, because there's a slightly different approach to it if there's a bench trial. But here, and as there's a couple of good cases for this, that where the alpha is so limited that if the judge relies on the other crimes evidence, that's wrongly admitted. And in Merrill, the U.S. Supreme Court was saying if the defense objects to the admission of certain evidence and the court so relies, you can assume that the court relied on it. And here the court did rely on it. And one of the things that's important to remember here. What indication is there in the record that the judge may have relied on the other crimes evidence for improper purpose or propensity, for example? Well, I mean, actually, propensity, because this was a domestic violence case, propensity actually would not be an improper purpose. And so they were actually admitted for that reason. So even if he did do that, I wouldn't. Well, what's in the record to show that the judge actually relied on it? Well, what happened in this case is that there was such a jumbo of different charges. So usually what you have is you have some comment from the judge. There were comments from the judge indicating that he didn't differentiate between the actual charges at issue and the other crimes evidence. So the state really focused on the other crimes evidence at trial so much so that they didn't even elicit evidence related to 13 of the 14 charges against him in one of the cases. And then this sort of confusion came to a head when the judge was finding what's shown guilty. I want to get back to the confusion. But this was a case that one judge ruled on the motion and then the trial judge heard it at trial, right? Well, what happened was first one judge ruled on it and said, and then the other judge was actually given another opportunity to rule on it as well. So it was actually ruled on twice. And then the second judge looked at it at trial. So when the first judge was ruling on it, he said this probably meets the threshold of Donahoe. But he said that any concerns about dissimilarity or prejudice goes to weight and not admissibility. But, in fact, he was required to make a meaningful assessment of prejudice. And then the second judge, when looking at whether or not the evidence should be admitted, he said a couple of things that were sort of concerning. One of the things was that he said that it's generally admissible in this type of case, not in this case, but sort of saying it's generally okay to allow the context. But then he said something strange that made it seem that he didn't actually, that he hadn't done the proper analysis of prejudice. He said that this evidence, this violent other crimes evidence, would help the defense as well. And it's very difficult to imagine how, when you're talking about all these telephone charges, how this violent in-person other offenses could help the defense. And so that suggests that he did not engage in the meaningful prejudice analysis that he was required to. And then, in a final nutshell, in Guilty, there was a sort of commingling of discussions of the other crimes evidence and evidence of the actual charges. Now, when he made his ruling on the admissibility, was that before or after the testimony came in at trial? It was before the testimony came in at trial. And so he said he had just been assigned to the case. He said, there are a lot of pleadings, I've talked to the attorneys, but it was actually unclear from the record that he was aware of what exactly the other crimes evidence was in relation to what the charge offenses were. But the objection could have been re-raised after he heard it, if there was a concern as to his understanding of the prior judge's ruling. But, frankly, even if he didn't understand it, the prior judge ruled, and then he heard it. But the prior judge ruled on it, but really didn't properly weigh prejudice. And even if he had weighed it, this is not a preserved issue, and it still amounts to plain error because of the negative effect of this improper evidence at trial because of its prejudicial nature. And so, to whatever degree the judge did engage in analysis, his conclusion was incorrect given the nature of the evidence that was of the other crimes evidence. And then the way that the judge, in finding Schoen guilty, relied on it, exacerbated any harm of the admission of the other crimes evidence. Go ahead. Isn't that all kind of speculative as to the judge's decision-making process? Well, to what, he spoke on the record. I mean, the record sort of rebuts the idea that he didn't, I mean, any idea that he didn't rely on it because one of the things that he says in finding Schoen guilty, he reads there are four text messages. Two of those text messages are tied to dates for which Schoen was actually acquitted. So presumably the judge wasn't relying on those in finding him guilty because he acquitted him of those two charges. Then there was a text message that wasn't tied to any date at all. And then there was a very abusive text message related to the entire issue, which was the other crimes evidence. And so if he's focusing on his text messages, two of which the client was acquitted, and then one of which wasn't tied to any date, presumably he's focusing on the other crimes evidence. It was the same with talking about the wine threat of Schoen breaking into the apartment allegedly and throwing a bottle of wine at the complainant. That was one of the – the judge in making the ruling was very terse, and he really didn't say very much about why he was making these findings. But everything that he said went back to the other crimes evidence. And so he talked about the other crimes evidence and also to go into issue two, also evidence elicited by defense counsel. But he talked about how Schoen had broken into the apartment and threw a wine bottle, and he was very disturbed by the violent nature of that offense, which was not one of the crimes that was actually at issue. He was really focusing on that in order to find Schoen guilty of these 19 other offenses for which he was found guilty. And so because of these other crimes evidence being so dissimilar and so much more prejudicial given both their nature and the extremity of what they're like, it was preliminary to introduce these other crimes. First, the evidence was closely balanced. It's an important moment that we find that the other crimes evidence should not have been admitted. The next question is whether or not the evidence was harmless beyond a reasonable doubt. So let's kind of move through the analysis here. Okay. Well, I mean, because this evidence wasn't – because the issue wasn't preserved, I was sort of going straight to – I was sort of looking at closely balanced and fair trial. But in terms of being harmful, it was definitely harmful because of the way the judge relied on it in finding Schoen guilty. He didn't talk about the evidence that was specifically related to these phone calls. He didn't talk about the things that the state was actually intending to prove Schoen guilty of. He talked about these text messages, and he talked about him throwing the wine bottle. That was really the focus of his finding. And so the focus of his finding was on this other crimes evidence. And so assuming it was wrongly admitted, the harmless – it was not harmless because of the way the judge relied on it. And the defense counsel failed to preserve this issue. And so to argue this plain error under both prongs, first, the evidence was closely balanced. As the state acknowledges in its brief, by citing the evidence that was elicited by defense counsel, the state did not elicit very much evidence against Mark Schoen in this case. In fact, most of the most damaging evidence was elicited by his own defense counsel. And additionally, to whatever degree this comes down to an issue of credibility, the complainant had very serious credibility issues. So the relationship between the complainant and Mark Schoen went on from 2010 to 2011 and involved a lot of money going one way, that Mark Schoen was learning her money or getting her money. It's sort of unclear what was exactly happening. But after they broke up, he filed a civil lawsuit against her, attempting to get the money back. And then it was only after she was served in that civil lawsuit six days later that she brought this charge against him, relating to dates prior to when the civil lawsuit was brought. But she was sort of sitting on any complaints that she might have had. And then once the civil lawsuit happened, then she decided to complain about these alleged incidents. And Mark's prior lawyer said that the complainant told him, none of this would be happening if Mark hadn't sued me. And she also claimed to not know anything about a settlement agreement that her attorney drafted, saying that she would drop the cases against him if he dropped a civil lawsuit. And she also came up with a lot of things on the stand that the state had clearly never heard of. For instance, that she claimed that she had a videotape showing Mark breaking the front door of a condo building, but that she personally decided not to show the police or the state's attorney because she decided it wasn't pertinent. And so not only was the evidence close to balance, it's typically a violation of the defendant's right to a fair trial whenever other crimes' evidence is improperly admitted. And so because this other crimes' evidence sort of loomed so large over the case in terms of all the questions the state was asking to the complainant, the opening argument, the closing argument, and the judge's finding, this court should remand for a new trial on all of these charges  And all of that is sort of tied around with what defense counsel did in this case. Now, the state concedes that the prosecutors in this case really didn't provide much specific evidence about the 21 charges that they brought against Mark Schelling. And in fact, the majority of evidence was brought, was elicited by defense counsel. The state asked the complainant some very vague questions, and there was a flurry of dates and allegations, but very little to tie anything to the specific dates in the indictment. So the state brought those 21 charges, but was asking about, and some of them involved ranges of dates, but the state was asking about ranges of dates that were not even in the indictment and actually only asked her about two specific phone calls that were directly tied to the indictment. And that was count 10 of 6898, and then the call that was issued in the other case. But defense counsel, okay. from the complainant in order to prove him guilty of all these offenses. What about the state's argument that it was trial strategy? Strategy, yeah. Well, if it was trial strategy, the time to stop that strategy would be the time that you've realized, oh, wow, I just proved my client guilty of a count against him. He started out with one claim, and then I think any competent attorney would then say, I better try a different strategy. I also had better stop asking questions like, did he call you on August 8th, yes or no, rather than asking a question like, if he was actually trying to prove that she had very little recollection, he could have asked a question like, describe everything that happened between you and Mark Sheldon in August 2012. And so she would have had to explain what happened on that date. Instead, he asks her these very leading questions. Did he call you on August 8th? How many times? 20 to 50. Boom. Assuming credibility, that charge is proved. And it went on like this for 30 pages. It was after 20 pages of this that he proved his own client guilty of two Class 2 felonies that the State had not even asked a word about. Instead of relying on... Do you know what counts those were? Sorry. Do you know what counts those were that you just said? The two? Oh, the two, yes. It was count 10 in 6898, and then it was actually all seven counts. I mean, what? I'm sorry? It was count 10 in the first case, 6898, which was harassment by phone after an order of protection had been imposed against Mark Sheldon. And then also all of the counts in 12 of 14, because those were all related to one specific phone call. And so it was about those two phone calls, the one on April 11th and the one on September 25th. So for all of these reasons, I would ask that this Court reverse Mark Sheldon's convictions and remand for a new trial. Thank you very much. Thank you. Again, good afternoon. I'm Cook County Assistant State Attorney Veronica Calderon-Malavia, representing the people of the State of Illinois. Your Honor, this defendant has not shown that the introduction of other crimes' evidence was error, much less plain error. This case was about a past domestic relationship and a continuing series of crimes the defendant committed against the victim after their breakup. But this case was also about the defendant's theory of defense, where he claims that the victim made up these crimes in order to force or blackmail the defendant to drop the civil lawsuit that he filed against her. So both the defendant's past crimes and the victim's past bad acts were at the heart of this case and were both relevant and primitive. Specifically, the defendant's other crimes, it was very relevant on several grounds. First, they were part of a continuing narrative that led to the instant charges. In fact, the other crimes were the underlying basis for the order of protection that the defendant was charged here with violating. Second, they spoke to the defendant's state of mind. He didn't stop with property crimes, but he continued to call and harass the victim. This was not about him getting his money back because he could have relied on a civil lawsuit for that. His conduct, the other crimes show that his conduct was designed to harass the victim after she would not have any more contact with him. Doesn't the law require the trial judge to engage in a meaningful analysis here? Yes, it does. And the defendant had the benefit of two trial judges reviewing his objection to the other crimes.  What did you understand it to mean when the trial judge said it would help the defendant? Well, like I said, the defense counsel definitely used the timing of the other crimes to support his theory. What did you understand it just to mean when he said that it would help the defendant? The defendant used the timing, the dates of the other crimes, because they occurred right after she was served with a civil lawsuit and to support his theory that she just made these up in order to avoid paying him in the lawsuit. So the other crimes' evidence also speaks to the victim's state of mind. Because the defendant had previously crossed the line between verbal aggression to physical aggression, it was reasonable for her to fear for her safety and for her to suffer emotional distress through these telephone calls in which she threatened to hurt her or kill her. It explains why she repeatedly called the police, why she was constantly engaged changing her route to work, and it also explains why she was concerned for her parents. And since the other crimes' evidence speaks to both the defendant's intent and the victim's state of mind, they were relevant in, as I stated, rebutting the defendant's theory of defense. What about the court saying that it goes to the weight as opposed to the admissibility? Well, I think the court was referring to that with respect to defense counsel's objection to the lack of evidence corroborating these two incidences. It was not referring to weighing the prejudice versus the private value. The first judge who considered it, it stated that the other crimes' evidence complies with the threshold requirement in the statute and both mandate that the court weigh the probative value against the prejudicial value, indicating that the first trial judge did too. And the second judge explicitly stated that this was more probative than prejudicial. I don't understand this. Why would the state's attorney's office indict the defendant for these offenses, drop the charges, and then use them in a potentially prejudicial way in a case where they have two more indictments pending? I mean, what sense does that make? Why would the state insist on injecting potentially reversible error into a trial where they have all this evidence of 21 incidences of telephone harassment, text interference? Well, I mean, what is in the record is there were misdemeanor counts charged, and they were elevated to a felony. It's not in the record that they were undermining which were misdemeanors. They were charged as felonies. The record supports the fact that they were charged as misdemeanors, and they were later upgraded after the defendant kept consistently harassing and calling the victim. And the other crimes evidence, it's not injecting reversible error because they were commonly admitted. It is when the crimes are so dissimilar that the prejudicial effect far outweighs the probative value, and that's the problem. The statute at issue here, as well as common law, requires a general similarity, especially when modus operandi is not at play, and that is not at play here. It totally meets the general similarity requirement of the statute and common law. It was the same victim. They all occurred after the breakup, and they're all forms of aggression, whether it's verbal aggression or physical aggression aimed at intimidating the victim because she would refuse to have any more contact with him. So when you look at the record, it was properly considered, nor was it improperly focused on by the state or the trial judge. The state merely put it on first because it occurred first, and the text was introduced regarding to the tires because the text connected the defendant to the slashing of the tires. The victim did not see that incident. And there's also nothing in the record to show that the trial court improperly considered this. In fact, this is a bench trial, and it's presumed that the judge followed the law and considered the other crime's evidence for only its limited purpose. And there's affirmative evidence in the record that he did so. The trial judge acquitted the defendant on two of those counts.  What that shows is that he looked at the evidence as to each count and determined whether the defendant was guilty or not. And so there is absolutely no abuse in this case, and we ask that you affirm the trial court's ruling. What's your position on the defense attorney proving the defendant guilty beyond the reasonable doubt of six or eight counts? Where the state presented no evidence to support those counts, but on cross-examination, the defense lawyer did. I will rather concentrate on the counts one through six because we've conceded that the other counts are merged. And defendant's whole ineffective assistance of counsel claim is based on the allegation that the state did not present any evidence that he committed offenses one through six, which covered the dates between November 26, 2012. Which case are you talking about, one through six in? In indictment one. He only raises ineffective counsel indictment one, which counsel referred to as 68. 6898? Right. The ineffective only focuses on that indictment. So counts one through six cover the dates between November 26, 2012 and March 10, 2013. It's not accurate that there was no evidence submitted by the state. Although I missed it in my brief, I admit, on page 35 of the record, the state asked, between November 7th of 2012 and November 26th of 2012, how many times did the defendant call you? Unquote. Close quote. The victim answered hundreds, and she also stated that the calls were becoming progressively more scary and threatening. What this means is that the state elicited undirect that defendant made threatening calls on November 26, 2012, and that's one of the dates covered in counts one through six. So because there was some evidence that the state elicited such evidence during the direct examination of the victim, it was reasonable for defense counsel to ask about this period of time, since it dealt with the most serious allegations in the indictment. Defense counsel, the record shows that defense counsel pushed the victim and asked specific questions in order to challenge her credibility, her truthfulness, and her motive, especially where the victim at times was vague and imprecise. This was sound trial strategy. But even if this court finds that it was a mistake in asking these specific questions, it was still not constitutionally deficient. Defense counsel did not just elicit damaging evidence and move on for no tactical reason. He challenged that evidence. He tied his questions about November 26, 2012, and March 10, 2013, to a series of defense that the victim fabricated these charges against him to force him to drop his civil suit. The record shows that immediately after asking the victim about these time periods, defense counsel pursued a line of questioning that he attempted to connect these calls, block calls which the victim attributed to the defendant, to 309 numbers that were linked to the victim's childhood friend Nick and his company. And incidentally, defense counsel also presented a witness to attempt to prove out this theory of block calls. And if you look at the defense counsel's cross-examination, he got the victim to admit that she had received thousands of dollars from the defendant. The victim was forced to explain why the defendant's checks had the word loan written on them. She was also forced to explain a promissory note that she allegedly signed, a document that she signed and drafted where the defendant would promise not to sue her and ask for his money back. And he also was forced to explain a drafted settlement agreement that was prepared for an attorney. And finally, defense counsel also presented a witness that witnesses who attempted to establish that the defendant could not have called the victim on November 26, 2012. So if we look at the record, there's plenty of evidence that counsel elicited to challenge the victim's credibility. And this was a reasonable trial strategy. And... Is the evidence closely balanced? I would say, no, the evidence is not closely balanced. It's true that there are two different accounts here, but the strongest collaborating piece of evidence in this record is the April, the recording of the defendant's call to the victim in April of 2013, where he's heard aggressively demanding to listen to her gutless parents. So he wanted to talk to her gutless parents, right? That call occurred after the order of protection. It occurred after the defendant was repeatedly arrested for illegal contacting the victim. It occurred after misdemeanor charges. It occurred after the filing of the first indictment. That strongly corroborates that her testimony that the defendant was calling her was truthful, and it strongly rebuts defendant's theory of defense. So that strong piece of evidence takes this case out of the closely balanced bond. Even if it's... I'm sorry, go ahead. No, go ahead. Even if the evidence is not closely balanced, our analysis also requires us to look at the seriousness of the error. With respect to ineffective? In terms of the omission of the other crimes evidence, as Justice Pierce just mentioned, you had tons of information that you were able to use at trial. You didn't even need the other crimes evidence. Oh, I disagree. As I stated, it was relevant to establish her state of mind of how she reacted. It was relevant to rebut his theory of defense that this was just about money and about her not having to pay him money back. I think it was very relevant, and there was no abuse of discretion. But going back to defense counsel's performance, his performance was totally unlike the cases that defendants cite to us. Could you just, and sorry to interrupt you, but in case 6898, counts 9, 11, 12, 13, and 14. Was there any, did the state provide any evidence? Which one? Other than 9, 11, 12, 13, and 14. Okay, on count 9. Great. I would look to the record on direct, right, from 26 through 27. Just a question about calls from June 7, 2012 to September 25, 2012. What's the other count? 9, 11. Okay, count 11, direct. There was testimony about calls on page Y34 and 11 and 12. November 26 was discussed on Y35. And what other count? The only. 12, 13, 14. Okay, 12, they did discussion about calls on direct on 35. And count 13, there was no direct with respect to that. However, November 26, and that date range is between November 26, 2012 to March 10, 2013. And on page Y35, on direct, the victim testified that she got harassing calls during November 26, 2012. The only count that was, another count that there was no direct evidence was count 7, which defendant was found not guilty of. And it was found not guilty of because not only was it on direct, but the text messages were never tied up to that date. She could not remember, did not recall the text messages. So there was no evidence either on direct or cross to tie up to October 21, 2011. So this case is different from the case decided by a defendant where attorneys there elicited indivisible evidence like a police, like contents of a police report or elicited unchallenged damaging evidence. Here, defense counsel runners aggressively challenged the victim's testimony for credibility and motive, presented an identifiable theory of defense regarding all the counts. So looking at the totality of counsel's performance, which Strickland mandates, defense counsel, who was partially successful, was not constitutionally deficient. Can I, just finally, I'm reading the conclusion of your reply brief. And it says the people of the state of Illinois respectfully request that this honorable court in 13 CR 6890 reverse defendant's convictions and remand the case for a new trial. That was a mistake on my part, and I would ask this court to look at the content and the substance of my argument. That's kind of what I thought. Yeah. And so. We should consider that an admission? No. So I would ask this court to consider the arguments I made today and the arguments contained in my argument in my brief and affirm defendant's convictions in both cases. Very well. Thank you. Ms. Pugh, briefly. Thank you. So there's been a lot of talk up here about the ranges of dates in 6898. And the state did ask for complaint about the range of dates of November 7th to November 26th. But the range of dates discussed here is November 26th to March 10th. There was never any specific testimony about November 26th. There was just endless range of dates. March 7th to the 26th were their calls, and she said that there were. But there was never anything to tie it specifically to the 26th or certainly nothing to tie it to the 26th of November through March 10th. There was no testimony whatsoever about those dates. And so the state did ask about the 7th to the 26th, but that is actually not tied to any specific counts in the indictment. And as for the claim that the state started discussing the other crimes evidence first because it came chronologically, that is not true. Count 7 came before any of the other crimes evidence. Then there was the first other crimes incident, then count 8, then the next other crimes evidence, and then everything else. So if the state had been trying to focus on everything chronologically and not front-loading this highly damaging violent test evidence, they would have done it that way starting with count 7. It wasn't chronological. Additionally, order of protection was not granted until December 2012, so there was no order of protection related to the other crimes evidence that was admitted. There was also a suggestion that the state needed the other crimes evidence so that they could prove why the complainant felt scared. The complainant is not required to corroborate her own fear. This is not something where we don't believe a complainant. If she says she's getting these harassing calls or texts, that she needs to corroborate in some way with some violence, that's not the kind of justice system we run here, and that was not necessary. And there's a big difference between Mark Shelling sitting at home on his couch at night watching TV, calling, texting, versus actually going out into the world and doing these violent things. So even if there was a hearing on the other crimes evidence, it was still extremely prejudicial. And as for counsel's questions, he could have relied on the states, though, to prove Mark Shelling guilty beyond a reasonable doubt. It's not that he was completely incompetent. He did bring other evidence in. He did show the history of money, but he also refused to rely on the states' requirement that they proved him guilty beyond a reasonable doubt and instead just elicited evidence. This case is actually quite a bit like Jackson, which I cite in my brief, which is a case in which defense counsel elicited one element of one offense, and I think it was two questions that elicited that element and led to a reversal. Here we have 30 pages of that. And so because of the highly damaging testimony that he was able to elicit, as well as the highly prejudicial nature of the other crimes evidence, we've asked that this court reverse on all charges and remand for a new trial. Very well. Thank you. Thank you both for your briefing and argument on this matter. We'll take it under advisory.